UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT CHRISTOPHER LITTON, et al., | |
| Plaintiffs, | Case No. 3:18-cv-01101 |
| v. | Judge William L. Campbell, Jr. |
| CITY OF MILLERSVILLE, et al., | Magistrate Judge Alistair E. Newbern |
| Defendants. | |

To: The Honorable William L. Campbell, Jr., District Judge

**REPORT AND RECOMMENDATION**

This civil rights action arises out of an altercation that took place on October 14, 2017, involving pro se Plaintiffs Robert Christopher Litton and Jennifer Marie Litton and their minor daughter D.L. (Doc. No. 19.) The altercation resulted in Mr. Litton's arrest for domestic assault of D.L. (*Id.*) Now pending are Defendants Officer Eric Richards's and the City of Millersville's motions to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. Nos. 22, 27), to which the Littons have filed a response in opposition (Doc. No. 31). Richards and the City have filed a combined reply. (Doc. No. 32.) For the reasons that follow, the Magistrate Judge will recommend that Richards's motion be granted and that the City's motion be granted in part and denied in part.

## I. Background

### A. Factual Background[1]

On October 14, 2017, Mr. Litton, his ex-wife Ms. Litton, and their daughter D.L. were spending time together at their home in Millersville, Tennessee. (Doc. No. 19.) Mr. and Ms. Litton gave D.L. permission to go get ice cream at Wendy's with a friend and the friend's grandmother. (*Id.*) When D.L. did not come home at the appointed hour, Mr. and Ms. Litton found out that D.L. "instead had been picked up by an unknown family and taken to the Highland Rim Racetrack in Millersville . . . ." (*Id.* at PageID#110, ¶ 5.4.) Mr. and Ms. Litton "had never . . . permitted [D.L.] to go to this racetrack due to safety concerns and the history of open drinking, fights and dangerous crashes at the racetrack." (*Id.* at PageID# 111, ¶ 5.5.)

Mr. Litton went to the racetrack to find D.L. and bring her home while Ms. Litton stayed home in case D.L. returned. (Doc. No. 19.) At the racetrack, Mr. Litton found D.L. and "calmly told [her] it was time to go home . . . ." (*Id.* at PageID# 111, ¶ 5.8.) D.L. "began to get emotional and cry and refused to leave and go home with her dad because she knew she was in so much trouble because she had broken the rules and disobeyed her mom and dad." (*Id.*) Mr. Litton called Ms. Litton and asked her to come to the racetrack to help take D.L. home. (Doc. No. 19.) When Ms. Litton arrived, D.L. "continued to cry and say she didn't want to go home . . . ." (*Id.* at PageID# 111, ¶ 5.10.) Mr. and Ms. Litton "both took [D.L.] by the arm to get her to stand up . . . and began walking her to the exit towards the parking lot that was several hundred feet away." (*Id.* at PageID# 111, ¶ 5.11.) D.L. "continued to cry and resist being le[d] to the parking lot . . . ." (*Id.* at PageID# 111, ¶ 5.12.)

---

[1] The facts in this section are drawn from the amended complaint (Doc. No. 19) and taken as true for purposes of evaluating the pending motions to dismiss.

An onlooker named Mr. Biles "began to yell and scream belligerently at [Mr.] Litton to take his f[*]cking hands off" of D.L. (*Id.*) "Biles looked very angry and red in the face and his hands were balled up like . . . someone who wanted to fight . . . ." (*Id.*) Mr. Litton told Biles that D.L. was his daughter, that she did not have permission to be at the racetrack, and that he was taking her home. (Doc. No. 19.) But "Biles continued to yell and aggressively followed [Mr.] Litton and [Ms.] Litton as they both took [D.L.] to the parking lot." (*Id.* at PageID# 112, ¶ 5.14.) On the way to the parking lot, D.L. "stopped walking several times" and "Mr. and Ms. Litton had to regain and maintain control of [her]." (*Id.* at PageID# 112, ¶ 5.16.) Ms. Litton also "attempted to talk to Mr. Biles and explained to him that [D.L.] had no permission to be there and that she was her mother and was taking her home." (*Id.* at PageID# 112, ¶ 5.15.) Ms. Litton later "discovered that it was Mr. Bile[s]'s wife who had picked up [D.L.] from their neighborhood and brought her to the racetrack . . . ." (*Id.* at PageID# 113, ¶ 5.28.)

"Biles became very aggressive and started yelling and saying things like, you don't know who you're messing with and you don't know who I am." (*Id.* at PageID# 112, ¶ 5.17.) "Biles then began to walk towards [Mr.] Litton in an aggressive manner, with his fist balled up[,] and [he] was being held back by two or three people . . . ." (*Id.* at PageID# 112, ¶ 5.18.) Mr. Litton "felt he was about to be assaulted by Mr. Biles[,]" so he "released [D.L.] and let [Ms.] Litton take [D.L.] by herself . . . ." (*Id.* at PageID# 112, ¶ 5.19.) Ms. Litton attempted to put D.L. into their car, but D.L. "resisted and tried to push away from her mother and [Ms.] Litton had to use her hip to maintain control of [D.L.] and keep her between the open door and herself so that [D.L.] could not leave." (*Id.* at PageID# 112, ¶ 5.20.) "Biles then screamed repeatedly at Mr. Litton, don't you f[*]cking push her." (*Id.* at PageID# 113, ¶ 5.21.) Mr. Litton, who was at the back of the car, "showed his hands to Mr. Biles and said he didn't push her." (*Id.*)

The Millersville Police arrived, separated the parties, took D.L. from her parents, "and put her in the back of a police car and did not allow either parent to speak to her after that." (*Id.* at PageID# 113, ¶ 5.22.) Defendant Officer George Aldridge asked Mr. Litton what happened, and Mr. and Ms. Litton explained "that they were there to pick up their juvenile daughter [D.L.] who had been taken to the racetrack without their knowledge or permission." (*Id.* at PageID# 113, ¶ 5.23.) Aldridge said that the police were there because they got a call about an assault and child abuse. (Doc. No. 19.) Mr. Litton assured Aldridge that D.L. had not been "assaulted or abused and that he and her mother had every right to remove their underage, minor daughter from a place they felt was unsafe and dangerous for her to be . . . ." (*Id.* at PageID# 113, ¶ 5.25.) He also told Aldridge that he saw several people taking video of the incident on their cell phones and suggested that Aldridge "look at those videos to see that there was no assault/abuse." (*Id.* at PageID# 113, ¶ 5.27.)

Ms. Litton told Aldridge that "she wanted Mr. and Mrs. [Biles] arrested for custodial interference or kidnapping" and Mr. Litton said he wanted Mr. Biles "arrested for assault because he was in fear [that] Mr. [Biles] was going to assault him." (*Id.* at PageID# 114, ¶¶ 5.29, 5.30.) Aldridge then spoke to Mr. Biles and a few other witnesses, and Aldridge "appeared to be smiling and laughing with Mr. [Biles]." (*Id.* at PageID# 114, ¶ 5.31.) "All the witnesses were sat together at one table and given statement forms to fill out together." (*Id.*) Mr. Litton later asked Aldridge if he "could separate [the] witnesses while they wrote their statements because" Litton was concerned that the witnesses would coordinate their stories "since it appeared they knew each other[,]" but "Aldridge did not respond." (*Id.* at PageID# 114, ¶ 5.34.) At one point, Aldridge took D.L. out of the police car and asked her if the real reason she did not want to go home was because

she was in trouble. (Doc. No. 19.) Ms. Litton heard D.L. say "yes[,] I'm going to be grounded for the rest of my life." (*Id.* at PageID# 114, ¶ 5.33.)

Aldridge arrested Mr. Litton for domestic assault. (Doc. No. 19.) Mr. Litton asked Aldridge if he had watched the cell phone videos, and Aldridge said that "he looked at one [video] and it did not show [Mr.] Litton doing anything wrong and . . . he could hear Mr. [Biles] yelling in the background." (*Id.* at PageID# 114, ¶ 5.36.) Aldridge said that "he received several cell phone videos" and would either "look at them later" or "just send them to the DA's office to see if charges would be dropped." (*Id.* at PageID# 115, ¶ 5.37.) Mr. Litton alleges that Aldridge submitted conflicting accounts of what happened at the racetrack reporting both "that [D.L.] said her father Robert Litton hurt her and she did not want to go home with either her mother or father as she was afraid they would beat her[,]" and that D.L. "said either her father Robert or her mother Jenny slammed her against the car" and did not mention being hurt. (*Id.* at PageID# 115, ¶ 5.38.) "No ambulance was called or pictures taken or documented in the police report of any visible or other injuries." (*Id.* at PageID# 115, ¶ 5.39.) The Littons allege that D.L. told Aldridge that her mom pushed her against the car, not her dad, and she never told Aldridge that she was afraid she would be beaten if she went home. (Doc. No. 19.)

Ms. Litton asked Aldridge and Richards, a "back up officer and supervisor[,]" if they were going to arrest her, too, "because she did the same thing [Mr.] Litton did to get their daughter to come home and he was arrested." (*Id.* at PageID# 115, ¶¶ 5.42, 5.44.) Aldridge and Richards said "no, why would we arrest you, you did nothing wrong" and told her that "they only wanted her husband[.]" (*Id.* at PageID# 115, ¶¶ 5.43, 5.45.) Ms. Litton asked to have D.L. returned to her, but Richards refused. (Doc. No. 19.) Richards said that, because someone called in an anonymous complaint of child abuse, he had to take D.L. to the police department to talk to the Department of

5

Children's Services (DCS). (*Id.*) Richards took D.L. to the police department, put her in a room by herself to wait for DCS, and did not allow Ms. Litton any contact with her daughter for the next several hours. (*Id.*) Ms. Litton said she did not want her daughter talking to anyone without an attorney, but DCS interviewed D.L. anyway. (*Id.*) D.L. was released to her mother later that night. (*Id.*)

After Mr. Litton was arrested, he "had to make bond to be released from jail, and had to hire an attorney to successfully have the criminal charge against him dismissed." (*Id.* at PageID# 124, ¶ 13.4.) The domestic assault charge against Mr. Litton was dismissed during a preliminary hearing on March 5, 2018. (*Id.* at PageID# 118, ¶ 6.5.)

### B. Procedural History

Mr. Litton initiated this action on October 12, 2018. (Doc. No. 1.) His original pro se complaint alleged claims against Aldridge and the City of Millersville under 42 U.S.C. § 1983 and state law for false arrest and malicious prosecution. (*Id.*) Ms. Litton and D.L. were not named as plaintiffs, and Richards was not mentioned or named as a defendant. (*Id.*) Aldridge answered Mr. Litton's complaint. (Doc. No. 12.) On January 28, 2019, the City filed a motion to dismiss Mr. Litton's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Litton had failed to plead sufficient facts to show municipal liability under § 1983 and that it is immune from Mr. Litton's state-law claims under the Tennessee Governmental Tort Liability Act (TGTLA). (Doc. Nos. 13, 14.)

On February 12, 2019, Mr. Litton moved for an extension of time to respond to the City's motion to dismiss. (Doc. No. 17.) Mr. Litton asked for "an additional thirty (30) days from the date of the entry [of the Court's order on his motion] to respond and prepair [sic] an amended complaint." (*Id.* at PageID# 104.) The Court granted Mr. Litton's motion on February 13, 2019 (Doc. No. 18), and he filed an amended complaint on March 14, 2019 (Doc. No. 19). The amended

6

complaint adds Ms. Litton and D.L. as plaintiffs and adds Richards as a defendant. (*Id.*) It also adds claims. (*Id.*) In Count I, brought under § 1983, Mr. Litton alleges that Aldridge violated his Fourth Amendment rights by arresting him for domestic assault without probable cause and by participating in or influencing his subsequent prosecution. (*Id.*) Count II alleges that the City is liable under § 1983 for Aldridge's and Richards's violations of all three plaintiffs' "rights to be free from unreasonable seizures as guaranteed under the Fourth Amendment" (*id.* at PageID# 118, ¶ 7.1) because it "contemporaneously approved and ratified [Aldridge's and Richards's] conduct and actions" and "failed to adequately train its police officers . . ." (*id.* at PageID# 119, ¶¶ 7.2, 7.4). Count III is comprised of Mr. Litton's state-law claims against Aldridge for false arrest and malicious prosecution. (Doc. No. 19.) Count IV is brought on behalf of D.L. against Richards under § 1983 for violations of her Fourth Amendment rights, and Count V is brought on behalf of D.L. against Richards and the City for false arrest under state law. (*Id.*) Counts VI and VII are brought by Mr. and Ms. Litton, respectively, against Richards and the City under § 1983 for violation of their fundamental parental rights "to oversee the care, custody, and control[ ] of [their] child . . . ." (*Id.* at PageID# 123, ¶ 11.1; *id.* at PageID# 124, ¶ 12.1.) The amended complaint seeks compensatory and punitive damages and costs. (Doc. No. 19.) Aldridge answered the amended complaint (Doc. No. 26), and Mr. Litton's claims against him in Counts I and III are therefore not before the Court.

Richards filed a motion to dismiss all claims against him in the amended complaint under Rule 12(b)(6). (Doc. No. 22.) He argues that Counts IV and V should be dismissed because Mr. and Ms. Litton may not assert claims on behalf of D.L. while appearing pro se and that Counts VI and VII should be dismissed as untimely because the amended complaint was filed after the relevant statutes of limitations had run and the original complaint did not name Ms. Litton or

7

Richards as parties. (Doc. No. 23.) The City has also moved to dismiss the amended complaint under Rule 12(b)(6). (Doc. No. 27.) It argues that D.L.'s claims in Counts II and V should be dismissed because Mr. and Ms. Litton may not represent D.L. pro se, that Ms. Litton's claims in Counts II and VII should be dismissed as untimely, and that Mr. and Ms. Litton's claims in Counts II, VI, and VII should be dismissed for failure to adequately allege municipal liability under § 1983. (Doc. No. 28.) Richards and the City also note that Mr. Litton filed the amended complaint more than 21 days after the City filed its first motion to dismiss and that Ms. Litton did not sign the amended complaint. (Doc. Nos. 23, 28.)

The plaintiffs filed a combined response in opposition to Richards's and the City's motions to dismiss. (Doc. No. 31.) They do not address Richards's or the City's arguments about Mr. and Ms. Litton's ability to assert claims on behalf of D.L. while appearing pro se. In response to Richards's and the City's arguments about the timeliness of Ms. Litton's claims, Mr. and Ms. Litton argue that Ms. Litton's "name being left off [of the] original complaint[']s header was a technical error[,]" that her claims "relat[e] back to [the] same incident[,]" and that "the defendants were on notice" of her claims because of "the frequency of . . . [Ms.] Litton[']s name in [the] original complaint . . . ." (Doc. No. 31, PageID# 191.) They also argue that they were unable to name Richards in the original complaint because "they were unable to identify [him] at the time due to . . . [the] improper identification of Officer Richards on the arrest warrant . . . as CPL Eric Roberts . . . ." (*Id.*) With respect to their municipal liability claims against the City, Mr. and Ms. Litton argue generally that the City's "lack of any official policy or procedure" regarding "domestic violence calls [and] child abuse calls," notifying DCS, and juvenile arrests and custody caused their constitutional injuries. (*Id.* at PageID# 193.)

Richards replies that, because Mr. Litton did not name "Eric Roberts" or any other officer besides Aldridge as a defendant in the original complaint, Mr. and Ms. Litton's attempt to name Richards in the amended complaint is untimely and there was no mistake of identity that would excuse that untimeliness. (Doc. No. 32.) Similarly, Richards and the City argue that, because the original complaint only asserted claims relating to Mr. Litton's arrest and did not advance any claims on behalf of Ms. Litton, her claims in the amended complaint are untimely. (*Id.*) The City also reiterates its arguments regarding municipal liability. (*Id.*)

## II. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because the Littons appear pro se, the Court construes their filings "'liberally'" and holds their amended complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Analysis

#### A. D.L.'s Claims Against Richards and the City

Richards and the City argue that all claims brought against them on behalf of D.L. must be dismissed because parents appearing pro se may not assert claims on behalf of their minor children. (Doc. Nos. 23, 28.) Mr. and Ms. Litton have not responded to this argument. (Doc. No. 31.)

It is well established that, "while a parent may technically bring suit on behalf of a minor child, he or she may not do so *pro se*—that is, the parent can only bring suit on behalf of the minor child through an attorney." *Adams v. Diamond*, No. 3:18-cv-00976, 2019 WL 314569, at *2 (M.D. Tenn. Jan. 24, 2019) (citing *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002)). Because Mr. and Ms. Litton are not represented by an attorney and D.L. is a minor, the claims brought on D.L.'s behalf should be dismissed without prejudice to refiling through counsel. *See id.*

#### B. Mr. and Ms. Litton's Claims against Richards

Richards argues, and Mr. and Ms. Litton do not dispute, that, under federal and Tennessee law, § 1983 claims must be filed within one year of the underlying injury. (Doc. No. 23.) The amended complaint adding § 1983 claims against Richards for deprivation of parental rights (Count VI and VII) was filed nearly a year and a half after the events of October 14, 2017. (Doc.

No. 19.) The timeliness of Counts VI and VII therefore depends on whether the claims relate back to the original complaint under Federal Rule of Civil Procedure 15(c). *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) (explaining that Rule 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations"). Rule 15(c)(1) provides that an amendment relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Mr. and Ms. Litton argue that "they were unable to identify" Richards and name him as a defendant before they filed the original complaint because the warrant for Mr. Litton's arrest erroneously referred to Richards as "Eric Roberts . . . ." (Doc. No. 31, PageID# 191.) But the original complaint does not name "Eric Roberts" as a defendant, nor does it mention a "Roberts" or any officer other than Aldridge taking part in the events that gave rise to Mr. Litton's original claims. (Doc. No. 1.) Mr. and Ms. Litton's argument that they did not know Richards's identity is therefore unavailing. The Sixth Circuit has held "that an absence of knowledge is not a mistake, as required by Rule 15(c)(1)(C)(ii)." *Brown v. Cuyahoga Cty.*, 517 F. App'x 431, 433–34 (6th Cir. 2013) (citing *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)). In other words, plaintiffs do not satisfy the mistake-of-identity prong of Rule 15(c)(1)(C) where, as here, they "simply did not know

whom to sue or opted not to find out within the limitations period." *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012). "The relation-back protections of Rule 15(c) were not designed to correct *that* kind of problem." *Id.* (emphasis in original).

Mr. and Ms. Litton's Claims against Richards in Counts VI and VII should therefore be dismissed as untimely, and Richards should be dismissed from this action.

C. **Ms. Litton's Claims Against the City**

Ms. Litton's only other claims are municipal liability claims against the City under § 1983 for violation of her Fourth Amendment right to be free from unreasonable seizures (Count II) and violation of her parental rights (Count VII). (Doc. No. 19.) The City argues that these claims are untimely because Ms. Litton was not named as a plaintiff in the original complaint and the one-year statute of limitations for her claims expired before the amended complaint was filed. (Doc. No. 28.) The City also points out that Ms. Litton did not sign the amended complaint and argues that Mr. Litton cannot represent Ms. Litton pro se. (*Id.*) Ms. Litton argues that her name was left off of the original complaint because of a "technical error" and that the City was "on notice" of her claims because of how frequently her name appeared in the original complaint's factual allegations. (Doc. No. 31, PageID# 191.)

Ms. Litton's arguments are foreclosed by Sixth Circuit precedent. In *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313 (6th Cir. 2010), the Sixth Circuit held that "an amendment which adds a new [plaintiff] creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Id.* at 318 (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991)). The fact that the City had timely notice of Mr. Litton's original claims does not change this analysis. Rule 15(c), as applied in *Asher*, does not "allow[ ] untimely plaintiffs to ride piggyback on the claims of timely plaintiffs." *Id.*; *see also id.* at 320 ("[W]e repudiate the conceit that an action filed by one plaintiff gives a defendant notice of

the impending joinder of any or all similarly situated plaintiffs." (alteration in original) (quoting *Young v. Lepone*, 305 F.3d 1, 15 (1st Cir. 2002))).

Ms. Litton's remaining claims against the City in Counts II and VII should therefore be dismissed as untimely, and Ms. Litton should be dismissed from this action.

### D. Mr. Litton's Claims Against the City

Aside from Mr. Litton's claims against Aldridge, which are not before the Court, the only remaining claims in the amended complaint are Mr. Litton's municipal liability claims under § 1983 for violation of his Fourth Amendment right to be free from unreasonable seizures (Count II) and violation of his parental rights (Count VI). (Doc. No. 19.)

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" through execution of its own policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 386 (1989) (emphasis in original); *see also Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 692 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original)). For municipal liability claims, the overarching question is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Accordingly, for a municipal liability claim "to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cty.*, 753 F.3d 639, 660 (6th Cir. 2014). The City does not argue that Mr. Litton has failed to plead the violation of a federal

right or action under color of law. Instead, it argues that Mr. Litton has failed to adequately plead the existence of a custom or policy that caused his arrest and that no policy or custom caused the "depriv[ation] of his ability to care [for] D.L."[2] (Doc. No. 28, PageID# 180.)

At trial or at summary judgment, a plaintiff must prove the existence of a municipal custom or policy in one of four ways:

> The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas*, 398 F.3d at 429. At the motion to dismiss stage, however, a plaintiff need only plead sufficient factual content to allow the court to draw the reasonable inference that a municipal custom or policy caused the alleged violation. *See Warren v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:14-CV-2373, 2015 WL 3417844, at *6 (M.D. Tenn. May 27, 2015); *Naselroad v. Mabry*, Civil Action No. 5:14-389, 2015 WL 1412007, at *5 (E.D. Ky. Mar. 26, 2015); *see also* 6 James Buchwalter et al., *Federal Procedure* § 11:326 (Lawyers ed. updated Nov. 2019) ("A plaintiff need not specifically plead or identify an unconstitutional policy on the part of a municipality to survive a motion to dismiss a municipal liability claim under § 1983; at the very least, however, a plaintiff must allege facts which would support the existence of an unconstitutional policy or custom.").

---

[2] Because Mr. Litton does not appear *in forma pauperis* and is not incarcerated, the Court does not have an independent obligation under 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether the amended complaint states claims for which relief can be granted. Further, the Sixth Circuit has held that, "absent compelling reasons, [the Magistrate Judge Act, 28 U.S.C. § 631 et seq.,] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

The amended complaint alleges, in relevant part:

> 7.2 Defendant City of Millersville contemporaneously approved and ratified the conduct and actions of Defendant George Aldridge and Eric Richards.
>
> 7.3 Defendant City of Millersville's customs, policies, procedures, and training were the motivating force behind the arrest and prosecution of Plaintiff Robert Litton along with other actions that led to violations of Jennifer Litton and [D.L.]'s constitutional rights. The City of Millersville is liable for the unlawful actions of both Officer Eric Richards and Officer George Aldridge on all the listed counts in this lawsuit because the City has shown a deliberate indifference to the training of its officers.
>
> 7.4 It is upon information and belief that the City of Millersville has failed to adequately train its police officers in the most basic of acts that it should be obvious an officer would be required to act on (not limited to: how to investigate domestic assaults, juvenile law, parental rights, how to determine probable cause, constitutional law)[.]
>
> 7.5 It is upon information and knowledge that the City of Millersville has no such records for policy and procedures pertaining to domestic violence response, child abuse response, department of children services referrals, dealing with juvenile arrest, custody and protective custody.
>
> 7.6 That by not training and the training that does occur being inadequate for officers on these usual and reoccurring situations it amounts to deliberate indifference on the part of the City of Millersville.
>
> 7.7 The City of Millersville should have known that the failure to train and inadequate training issues would result in constitutional violations.
>
> 7.8 The Plaintiff alleges that these violations are the direct cause of all counts in this complaint.
>
> 7.9 The Plaintiff further alleges that the City of Millersville through its lack of training and inadequate training is held vicariously liable for the actions of its officers[.]

(Doc. No. 19, PageID# 119–20.)

The City is correct that some of these allegations are bare legal conclusions that are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. 679. For example, Mr. Litton alleges that the City "contemporaneously approved and ratified the conduct and actions" of Aldridge and Richards without offering any factual support for this allegation. (Doc. No. 19, PageID# 119, ¶ 7.2.)

15

However, Mr. Litton also alleges that the City "has no . . . records for policy and procedures pertaining to domestic violence response, child abuse response, department of children services referrals, dealing with juvenile arrest, custody and protective custody"[3] (*id.* at PageID# 119, ¶ 7.5), and that the City "has failed to adequately train its police officers" in these areas (*id.* at PageID# 119, ¶ 7.4).

These allegations, taken as true and construed in Mr. Litton's favor with the other factual allegations in the amended complaint, plausibly state a claim that a municipal policy or custom of inadequate training caused the alleged violations of Mr. Litton's federal rights. *See Naselroad*, 2015 WL 1412007, at *5 (finding that municipal liability claim survived motion to dismiss where plaintiff "allege[d] that the[ ] municipal defendants did not have formal or written policies regarding the 'knock and talk' [search] procedure and that the individual defendants had not received training on such procedures"); *cf. Love v. Franklin Cty.*, 376 F. Supp. 3d 740, 749 (E.D. Ky. 2019) (finding that municipal liability claim survived motion to dismiss where plaintiff "alleged both a complete lack of training and a failure to discipline [county jail] employees").

The City's arguments to the contrary rely almost exclusively on cases decided at summary judgment and not the pleading stage. (*See* Doc. No. 28, PageID# 180–84.) The only two cases cited in the City's brief that involved motions to dismiss are distinguishable. In *Minick v. Metropolitan Government of Nashville*, the court found that the plaintiff's allegations regarding municipal liability were "boilerplate and conclusory and contain[ed] no specific factual

---

[3] Mr. Litton's response in opposition to the motions to dismiss includes attached emails showing that Litton submitted public records requests to the City for its relevant police policies and procedures, among other things, and that the City's response indicated that "[n]o such record(s) exists or this office does not maintain record(s) responsive to your request." (Doc. No. 31-1, PageID# 207.) However, these emails are not referenced in the amended complaint and are not properly considered in resolving the pending motions to dismiss.

16

assertions." No. 3:12-cv-0524, 2014 WL 3817116, at *2 (M.D. Tenn. Aug. 4, 2014). Here, Mr. Litton alleges that the City has no records of any policies regarding "domestic violence response, child abuse response, department of children services referrals, dealing with juvenile arrest, custody and protective custody" (Doc. No. 19, PageID# 119, ¶ 7.5) and that the City "has failed to adequately train its police officers" in these areas (*id.* at PageID# 119, ¶ 7.4). He further alleges that Defendant Aldridge arrested him for domestic assault without probable cause and describes the circumstances of his arrest in great detail. (Doc. No. 19.) These specific factual assertions also distinguish Mr. Litton's amended complaint from the operative pleading in *Johnson v. Metropolitan Government of Nashville and Davidson County*, which the court found "lack[ed] any supporting facts to patch the threadbare legal claims for failure to train, supervise and discipline police officers, and for adoption of improper pursuit policies or customs." No. 3:10-0589, 2010 WL 3619790, at *3 (M.D. Tenn. Sept. 13, 2010). "At the motion to dismiss stage, the court must determine only whether [Mr. Litton] is entitled to offer evidence to support his claims, not whether he can ultimately prove the facts he alleges." *Warren*, 2015 WL 3417844, at *6. "Whether it's true [that] training [in Millersville] was really so inadequate . . . will certainly come to light in discovery or at trial. At this stage, [Mr. Litton] is not required to prove [his] claim, only plead it." *Love*, 376 F. Supp. 3d at 749.

Finally, the City's argument that "no alleged failure to train . . . caused any deprivation of Mr. Litton's right to the custody and care of his daughter" is unpersuasive. (Doc. No. 28, PageID# 180.) According to the City, Mr. Litton "was deprived of his ability to . . . care [for] D.L. because he was arrested for domestic abuse which resulted in a 12-hour hold and then a no-contact order[,]" not because of any "alleged failure to train regarding parental rights . . . ." (*Id.*) This

argument ignores Mr. Litton's factual allegations that he was arrested and his daughter was taken into protective custody because the City failed to adequately train its police officers.

The City's motion to dismiss should therefore be denied with respect to Mr. Litton's municipal liability claims in Counts II and VI.

### IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the Court GRANT Richards's motion to dismiss (Doc. No. 22) and GRANT IN PART AND DENY IN PART the City's motion to dismiss (Doc. No. 27) as follows:

- D.L.'s claims against Richards and the City in Counts II, IV, and V should be DISMISSED WITHOUT PREJUDICE;

- Mr. and Ms. Litton's claims against Richards in Counts VI and VII should be DISMISSED WITH PREJUDICE, and Richards should be DISMISSED from this action;

- Ms. Litton's claims against the City in Counts II and VII should be DISMISSED WITH PREJUDICE, and Ms. Litton should be DISMISSED from this action; and

- Mr. Litton's claims against the City in Counts II and VI should be allowed to proceed.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 10th day of January, 2020.

*[signature]*
ALISTAIR E. NEWBERN
United States Magistrate Judge