IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ROBERT CHRISTOPHER LITTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:18-cv-01101 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| CITY OF MILLERSVILLE, et al., | ) | MAGISTRATE JUDGE NEWBERN |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Defendants City of Millersville ("the City") and Officer George Aldridge's Motion for Summary Judgment. (Doc. No. 42). Plaintiff filed a Response (Doc. No. 51), and Defendant filed a Reply (Doc. No. 55). For the reasons discussed below, the Defendants' Motion will be **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from events that occurred in October 2017 in Millersville, Tennessee. Plaintiff Robert Litton ("Plaintiff") and his ex-wife, Jennifer Litton ("Ms. Litton"), were in Ms. Litton's home in Millersville when their fourteen-year-old daughter, D.L., requested and received permission from her parents to go out with a friend to a fast-food restaurant. (Doc. No. 53 ¶ 7). Plaintiff and Ms. Litton expected that their daughter would return a short time later. When she did not, they began searching for her. (*Id.* ¶ 8). They eventually discovered that she had gone with friends to the nearby Highland Rim Speedway ("the Speedway"). (*Id.* ¶ 9). Plaintiff went to the Speedway to retrieve his daughter. (*Id.* ¶10).

When Plaintiff arrived at the racetrack, he found his daughter standing along the fence line in front of the bleachers. (*Id.* ¶ 11). When D.L. saw her father, she began crying and saying that

her mother was going to kill her. (*Id.* ¶ 12). D.L. expressed that she did not want to leave with Plaintiff. (*Id.* ¶16). At some point during the interactions between Plaintiff and D.L., an onlooker called 911 and identified Plaintiff as an uncle trying to take D.L. home. (*Id.* ¶¶ 14-15). The caller told dispatch that D.L. did not want to leave with Plaintiff. (*Id.*).

Plaintiff called Ms. Litton and asked her to come to the Speedway to assist in bringing D.L. home. (*Id.* ¶ 17). When Ms. Litton arrived a short time later, she and Plaintiff each took one of D.L.'s arms and escorted her from the Speedway and to the parking lot. (*Id.* ¶ 19). D.L. continued to resist her parents' efforts as they walked and as her parents tried to force her into the car. (*Id.* ¶ 21). In describing the efforts to get D.L. into the vehicle, Plaintiff stated that Ms. Litton used her hip to prevent D.L. from maneuvering away from her. (*Id.*). Witnesses stated that during this struggle D.L. was shoved against the car. (Aldridge Decl., Doc. No. 45 ¶ 10). One onlooker, James Biles, told Plaintiff to take his hands off D.L. (Doc. No. 53, ¶ 20). Before Plaintiff and Ms. Litton could get D.L. into the car, Officer Aldridge and Corporal Richards from the Millersville Police Department arrived. (*Id.* ¶ 22).

Upon his arrival, Corporal Richards activated his body camera. Defendants submitted the body camera footage in support of their motion for summary judgment. (Doc. No. 48). The video supports the following facts. Officer Aldridge placed D.L. and her friend in his vehicle before he and Corporal Richards began their investigation (Doc. No. 53 ¶ 24). Corporal Richards spoke with Plaintiff while Officer Aldridge spoke with bystanders. (*Id.* ¶¶ 23, 25-26). The bystanders identified Plaintiff and Ms. Litton as the individuals that removed D.L. from the Speedway and forcefully pushed her into the car. (*Id.* ¶ 31, 35). When asked to clarify who had pushed D.L. into the car, witness Stephen Harter identified the Plaintiff. (*Id.* ¶¶ 31-32). Corporal Richards spoke with D.L. who first identified Ms. Litton as the parent who forcefully pushed her into the car before

2

stating that she wasn't sure since both parents were holding her by the arms at that time. (*Id*. ¶¶ 27, 33-34). After speaking with D.L, who the footage shows crying and asking Corporal Richards not to send her home, Corporal Richards called the Department of Children's Services to request an investigation before D.L. would be permitted to leave with her parents. (*Id*. ¶ 28)

After interviewing bystanders, collecting witness statements, reviewing at least one video made at the time of the event, and speaking with Plaintiff, Ms. Litton, and D.L., Officer Aldridge and Corporal Richards determined that Plaintiff should be arrested for domestic assault. (*Id*. ¶¶ 31-37). Officer Aldridge transported Plaintiff to Robertson County Jail, where he was charged with domestic assault. (Doc. No. 52 at 5). The Robertson County Judicial Commissioner determined that probable cause existed for Plaintiff's arrest. (Doc. No. 53 ¶ 42) The Commissioner set Plaintiff's bail and entered an order prohibiting Plaintiff from having contact with D.L. (*Id*. ¶¶ 42, 44). Ultimately the case was resolved by dismissal of the charges with Plaintiff responsible for court costs. (*Id*. ¶ 49).

Plaintiff, acting pro se, filed suit against the City and Officer Aldridge alleging 42 U.S.C. § 1983 claims for false arrest and malicious prosecution against Officer Aldridge (Count I); municipal liability under Section 1983 against the City (Count II); and state law claims for false arrest and malicious prosecution against Officer Aldridge (Count III). Plaintiff filed an Amended Complaint (Doc. No. 19), adding claims on behalf of D.L. against Corporal Eric Richards for Section 1983 violations of her Fourth Amendment rights (Count IV) and against Corporal Richards and the City for false arrest under state law (Count V). Plaintiff also added Section 1983 claims for both Plaintiff and Ms. Litton alleging deprivation of the right of a parent to oversee the care, custody, and control of their child in violation of the Fourteenth Amendment (Counts VI and VII).

Defendants Corporal Richards and the City filed motions to dismiss the amended complaint. The Court adopted the Magistrate Judge's Report and Recommendation (Doc. No. 34) dismissing all claims against Corporal Richards and dismissing the claims against the City on behalf of D.L. and by Ms. Litton. The only claims remaining before the Court are Counts I and III against Officer Aldridge and Counts II and VI against the City. Defendants now move for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015). When facts relevant to a summary judgment motion have been recorded on a video, "to the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos." *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017). "To the extent that facts shown in videos can be interpreted in multiple ways or

4

if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Id*.

The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.*

## III. ANALYSIS

### A. Qualified Immunity

The claims remaining against Officer Aldridge are claims of false arrest and malicious prosecution under Section 1983 (Count I) and state law claims of false arrest and malicious prosecution (Count III). Officer Aldridge argues that he is entitled to qualified immunity. Qualified immunity protects government officials from civil damages "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 977 (6th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). The doctrine of qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. at 978 (internal quotations omitted) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Once raised by the defendant, the plaintiff bears the burden to show qualified immunity does not apply. *Id*. The Court may address the prongs in any order. *Id*. Applying these standards, the Court will now address each of Plaintiff's claims in turn.

5

1. False Arrest

Because the presence of a constitutional violation is dispositive, the Court will address that prong of the qualified immunity analysis first. Plaintiff alleges false arrest in violation of his Fourth Amendment rights. "A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 279 (6th Cir. 2020) (internal citations omitted). To sustain a claim for false arrest, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (citing *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)).

"An officer has probable cause when 'the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). "[T]he officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Accordingly, the Court must examine the totality of the circumstances and "consider only the information possessed by the arresting officer at the time of the arrest." *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008).

Plaintiff was arrested for domestic assault. Tennessee law defines domestic assault as "an assault as defined in § 39-13-101 against a domestic abuse victim." Tenn. Code. Ann. § 39-13-111(b). Accordingly, the finding here is twofold: an officer must have probable cause to believe that an assault was committed, and that the victim is a domestic abuse victim as defined by the statute. The Tennessee Code defines assault, in relevant part, as: "intentionally, knowingly or

6

recklessly caus[ing] bodily injury to another" or "Intentionally or knowingly caus[ing] physical contact with another [which] a reasonable person would regard…as extremely offensive or provocative." Tenn. Code. Ann. § 39-13-101(a). A domestic abuse victim is defined, in relevant part, as "adults or minors who live together or who have lived together" or "adults or minors related by blood or adoption." Tenn. Code. Ann. § 39-13-111(a). There is no dispute that Plaintiff and D.L. are father and daughter. There is also no dispute that Plaintiff and D.L. lived together at some time. D.L. is therefore a domestic abuse victim as contemplated by the statute. The relevant inquiry, then, is whether Officer Aldridge had probable cause to believe that Plaintiff assaulted his daughter.

Considering the totality of the circumstances and the information available to the Officer Aldridge at the time, the Court finds that he had probable cause to arrest Plaintiff for the crime of domestic assault. Officer Aldridge arrived on the scene after the alleged misconduct occurred. It is undisputed that his investigation yielded four witness statements, each stating that Plaintiff and Ms. Litton "dragged" D.L. from the Speedway and "slammed" or "shoved" her against their car. (Doc. No. 53 ¶¶ 25-26; Doc. No. 45-3). One of the witnesses more specifically identified Plaintiff as the one who had shoved D.L. (Doc. No. 53 ¶ 32). It is undisputed that the officers interviewed D.L., who stated that her mother shoved her into the car and then stated that she wasn't sure who had done it because both parents were holding her. (*Id*. ¶¶ 27, 33-34). The video shows the officers conducting a patient and methodical investigation at the scene. The video also shows a hysterical D.L. begging the officers not to send her home with Plaintiff or Ms. Litton. It is clear to the Court that, based on the facts available to Officer Aldridge before the arrest, he had probable cause to believe that Plaintiff had assaulted his daughter.

Plaintiff's argument that the officers failed to consider exculpatory evidence does not alter this finding. The basis of Plaintiff's assertion is that Officer Aldridge failed to consider the lack of any visible injuries to D.L., failed to separate witnesses while they completed their witness statements, and failed to consider a cell phone videos which Plaintiff alleges show he had not assaulted his daughter.[1] These assertions are unpersuasive. Plaintiff cites no authority to support bare statements that a lack of visible injury precludes a finding of probable cause. Likewise, Plaintiff cites no authority that indicates that failure of an officer to separate witnesses or that Officer Aldridge's consideration of Mr. Biles' statements constitutes unreasonable investigative conduct. Even absent a statement by Mr. Biles, Officer Aldridge had three additional statements to consider in determining the existence of probable cause.

Finally, Plaintiff argues that Officer Aldridge's failure to view and preserve all of the cell phone videos allegedly taken amounts to incompetence. There is no dispute that Officer Aldridge viewed one video at the scene. (Doc. No. 53 ¶36). Though the parties dispute Officer Aldridge's characterization of the content, this video is not evidence before the Court, and Plaintiff cannot speculate as to the content of a video he did not view to create a question of material fact. Again, Plaintiff cites no authority to support his conclusion that the investigation was unreasonable, and the evidence before the Court does not support such a finding. *See Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009) ("No overly-burdensome duty to investigate applies to officers faced with the prospect of a

---

[1] Plaintiff also argues that "probable cause was destroyed" when Plaintiff informed the officers that he was D.L.'s father. (Doc. No. 52). This argument is without merit. Plaintiff's statements to the officers that he was there to retrieve his daughter from the Speedway have no bearing on Officer Aldridge's determination of whether, based on the facts and circumstances known to him, Plaintiff had committed the crime of domestic assault. More simply stated, that Plaintiff had a "good reason" for attempting to remove his daughter from the Speedway does not mean that the officers lacked probable cause to find that he assaulted his daughter in the process.

warrantless arrest. In initially formulating probable cause, they need not investigate independently every claim of innocence." (internal quotations omitted)).[2]

Notwithstanding Plaintiff's arguments, based on the facts and circumstances known to Officer Aldridge at the time of the arrest, the Court finds that he had probable cause to arrest Plaintiff for domestic assault. Because Officer Aldridge had probable cause, the arrest was reasonable under the Fourth Amendment. Plaintiff has failed to establish that there was a constitutional violation. Accordingly, Officer Aldridge is entitled to qualified immunity on Plaintiff's Section 1983 claim for false arrest.

### 2. Malicious Prosecution

Plaintiff also asserts a claim of malicious prosecution in violation of his Fourth Amendment rights. To sustain this claim, Plaintiff must prove: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). Probable cause is, again, a deciding factor here. "[A] plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution." *Fineout v. Kostanko*, 780 Fed.App'x. 317, 329 (6th Cir. 2019) (quoting *Marcilis v. Township of Redford*, 693 F.3d 589, 604 (6th Cir. 2012)). "Probable cause to initiate a criminal prosecution exists where facts and circumstances are sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged." *Id*. (quoting *Webb*, 789 F.3d at 660)

---

[2] Officer Aldridge states that he provided his business card to the bystanders and requested that they send him the videos they took. Any allegations that Officer Aldridge later failed to preserve those videos is immaterial to whether he had probable cause to arrest Plaintiff that night.

9

As the Court has already determined, based on the facts and circumstances known to Officer Aldridge at the time, he had probable cause to believe Plaintiff had committed domestic assault. Accordingly, Plaintiff has failed to establish a constitutional violation, and Defendant Aldridge is entitled to qualified immunity on the malicious prosecution claim as well. *See id.* (finding that the officer defendants were entitled to qualified immunity on the plaintiff's malicious prosecution claims because probable cause existed for the plaintiff's arrest).

**B.     Section 1983 Municipal Liability Against the City of Millersville**

Plaintiff asserts municipal liability claims against the City relating to two incidents: his arrest for domestic assault at the Speedway and his arrest at the home of Ms. Litton for violation of the bond conditions imposed following his domestic assault arrest. As to both instances, Plaintiff alleges failure to train and violations of his right to the care, control, and custody of his child under the Fourteenth Amendment.

"In order to hold a municipality liable under § 1983, a plaintiff 'must prove that the municipality's policy or custom caused the alleged injury.'" *Ouza*, 969 F.3d at 286 (quoting *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). "For municipal liability to exist, however, a constitutional violation must take place." *Voyticky* 412 F.3d at 679 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Rather, a municipality should only be held liable if "action pursuant to official municipal policy of some nature caused a constitutional harm." *Id*.

<u>1. Failure to Train</u>

Plaintiff asserts municipal liability claims against the City due to its failure to train its officers on and failure to have policies and procedures relating to domestic violence, child abuse,

10

parental rights, constitutional law, and probable cause, among other topics. Plaintiff states that the failure to train is tantamount to deliberate indifference and resulted in his false arrest and malicious prosecution in violation of his constitutional rights. The Court has already found that there was no constitutional violation here. Accordingly, the City's motion for summary judgment on this claim will be granted. *See Voyticky* 412 F.3d at 679. ("Because we have determined that Defendants are entitled to summary judgment on all of Plaintiff's constitutional claims for want of a constitutional violation, Plaintiff's municipal liability claim must also fail.").

2. Fourteenth Amendment Claim

Plaintiff's final claim alleges municipal liability against the City under Section 1983 for deprivation of his right to the care, custody, and control of his child in violation of his Fourteenth Amendment rights. Plaintiff states that he was in the process of engaging of the care, custody, and control of his child when he went to retrieve her from the Speedway, and that, by arresting him, the officer and by extension the City deprived him of that right. Plaintiff also alleges for the first time in his response to the motion for summary judgment that the City's municipal liability arises from an incident during which a Millersville Police Officer arrested him at Ms. Litton's home for violating the bond conditions imposed as a result of his arrest for domestic assault.

Plaintiff states that when Officer Aldridge and the officer at Ms. Litton's home "arrived at the scene and kept Mr. Litton away from his daughter, arrested him with a charge subject to bond conditions where he could not see his daughter, and subsequently charging him with a bond violation, they deprived Mr. Litton…of his Fourteenth Amendment constitutional right to oversee the care, management and control of his daughter." (Doc. No. 52 at 14). On this argument, Plaintiff presents conclusory assertions devoid of legal support. The Court finds that Defendants are entitled to summary judgment on this claim as well.

## C. State Law Claims

The Court having found that summary judgment is appropriate on all of the federal claims declines to exercise supplemental jurisdiction over Plaintiff's state law claims for false arrest and malicious prosecution. *See* 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the reasons stated herein, the motion for summary judgment will be **GRANTED** as to the federal claims against Officer Aldridge and the municipal liability claims against the City. The Court declines to exercise supplemental jurisdiction over the state law claims.

An appropriate order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE